**WO**                                                                            MDR

**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Aaron Emmanuel Soto, | No. CV 10-679-PHX-GMS (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, et al., | |
| Defendants. | |

Plaintiff Aaron Emmanuel Soto, who is confined in the Arizona State Prison Complex-Tucson in Tucson, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. #1), a "Motion for Leave to File Complaint on other than a Court-Approved Form" (Doc. #3), a "Motion to Exceed Page Limitation for Civil Rights Complaint" (Doc. #4), and an Application to Proceed *In Forma Pauperis* (Doc. #5). The Court will order Defendants Stapley, Brock, Wilson, Kunasek, Garrido-Wilcox, and Adams to answer the Complaint and will dismiss the remaining Defendants without prejudice.

**I.     Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $27.15.  The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate

TERMPSREF

1    Order requiring the appropriate government agency to collect and forward the fees according
2    to the statutory formula.

3    **II.    Motions**

4            The Court, in its discretion, will grant Plaintiff's "Motion for Leave to File Complaint
5    on other than a Court-Approved Form" and "Motion to Exceed Page Limitation for Civil
6    Rights Complaint."

7    **III.    Statutory Screening of Prisoner Complaints**

8            The Court is required to screen complaints brought by prisoners seeking relief against
9    a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.
10   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised
11   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
12   be granted, or that seek monetary relief from a defendant who is immune from such relief.
13   28 U.S.C. § 1915A(b)(1), (2).

14           A pleading must contain a "short and plain statement of the claim *showing* that the
15   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not
16   demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
17   unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
18   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
19   statements, do not suffice."  Id.

20           "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
21   claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,
22   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content
23   that allows the court to draw the reasonable inference that the defendant is liable for the
24   misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for
25   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
26   experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual
27   allegations may be consistent with a constitutional claim, a court must assess whether there
28   are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

## IV.     Complaint

In his Complaint, Plaintiff sues the following Defendants: Maricopa County Sheriff Joseph M. Arpaio; Maricopa County Supervisors Don Stapley, Fulton Brock, Max Wilson, Andrew Kunasek, and Mary Rose Garrido-Wilcox; Correctional Health Services (CHS) Director Betty Adams; CHS counselors Jane Doe 1 and Jane Doe 2; CHS employees Jane Doe 3, Jane Doe 4, John Doe 1, and John Doe 3; and CHS psychiatrist John Doe 2.

Plaintiff alleges that Defendants were deliberately indifferent to his mental health needs, in violation of the Eighth Amendment, while he was confined at the Maricopa County Jails.   He claims that during intake processing on March 17, 2008, he informed CHS personnel that he  had been diagnosed with bipolar disorder and anxiety disorder and that he had been prescribed medication to treat those ailments.  He was told that he would receive a follow-up visit from CHS staff once he arrived at his assigned housing unit.  A few days after Plaintiff arrived at his housing unit, he met with Defendant Jane Doe 1, who was hesitant to note Plaintiff's request to resume his medication and informed Plaintiff that she would return in a week to confirm that he wanted to resume his medication; she did not return.

On April 18, 2008, Plaintiff submitted a request for psychiatric services.  Defendant John Doe 3 informed Plaintiff that he was scheduled to be "seen by psych."  A week later, Plaintiff saw Defendant Jane Doe 2 and related to her the symptoms he was experiencing while unmedicated.  At that time, and again in May and June, Defendant Jane Doe 2 informed Plaintiff that he would be seen by a psychiatrist "soon."

On July 8, 2008, Plaintiff submitted another request for psychiatric services. Defendant Jane Doe 3 informed Plaintiff that there was one doctor who was working only three days a week and was responsible for 2,700 inmates and that Plaintiff was scheduled to be seen by the psychiatrist.  In July, Defendant Jane Doe 2 met with Plaintiff and told him that he was "on the schedule" and would be seen within a few weeks.

On August 21, 2008, Plaintiff submitted another request for heath services, again requested to see a psychiatrist, and reiterated symptoms.  Defendant Jane Doe 3 again

1   informed Plaintiff that it had been very difficult to schedule his appointment.  In August

2   2008, Plaintiff also requested a copy of the health services polices, but the request was

3   rejected by Defendant John Doe 1, who informed Plaintiff that he had been seen by mental

4   health staff on six occasions and that he was scheduled to be seen by a psychiatrist.

5           On September 3, 2008, Plaintiff filed a formal grievance regarding his deteriorating

6   mental health and his inability to see a psychiatrist.  That day, Plaintiff was seen by the jail

7   psychiatrist, Defendant John Doe 2, who determined that Plaintiff needed medication for his

8   mental conditions and prescribed medications for Plaintiff's bipolar disorder and anxiety

9   disorder.  The following day, Plaintiff met with Defendant Jane Doe 4, who was sympathetic

10  to Plaintiff's situation, was disgusted by the manner in which Plaintiff's situation had been

11  handled, and suggested that the delay was caused by "resource issues" and by Defendant

12  Adams's failure to allocate necessary resources to meet the health care demands of the jails.

13  On September 5, 2008, Plaintiff began taking his medications.

14          In his Request for Relief, Plaintiff seeks injunctive relief, monetary damages, his costs

15  of suit, and a jury trial.

16  **V.      Failure to State a Claim**

17          **A.      Defendant Arpaio**

18          Plaintiff alleges that Defendant Arpaio, as a matter of policy and practice, acted with

19  deliberate indifference because he failed to adequately train, supervise, or direct his staff

20  regarding the need for adequate and timely psychiatric care and has "ignor[ed] and/or

21  allow[ed] CHS'[s] shortcomings."

22          CHS is an administrative subdivision of Maricopa County.  Maricopa County, not

23  Defendant Arpaio, is responsible for providing medical care to county jail inmates.  See Ariz.

24  Rev. Stat. § 11-291(A).  Therefore, it is not Defendant Arpaio's responsibility to train CHS

25  staff or rectify CHS's "shortcomings."  Thus, the Court will dismiss without prejudice

26  Defendant Arpaio.

27  . . . .

28  . . . .

1

## B.    Doe Defendants

2    Plaintiff alleges that the Doe Defendants were deliberately indifferent to his

3    psychiatric needs because Defendant Jane Doe 1 failed to acknowledge Plaintiff's desire to

4    see a psychiatrist and failed to facilitate a timely appointment; Jane Doe 2 failed to facilitate

5    a timely psychiatric appointment; Defendants Jane Doe 3, John Doe 1, and John Doe 3

6    "repeatedly falsely insisted" that Plaintiff was scheduled to be seen by the psychiatrist or

7    would be seen soon; Defendant Jane Doe 4 failed to supervise or manage her staff to prevent

8    Plaintiff's unreasonable wait for timely and adequate psychiatric care; and Defendant John

9    Doe 2 failed to organize, prioritize, and otherwise effectively manage his time to meet with

10    Plaintiff regarding Plaintiff's psychiatric issues.

11    A pretrial detainee's claim for unconstitutional conditions of confinement arises from

12    the Fourteenth Amendment Due Process Clause rather than from the Eighth Amendment

13    prohibition against cruel and unusual punishment.  Bell v. Wolfish, 441 U.S. 520, 535

14    (1979).  Nevertheless, the same standards are applied, requiring proof that the defendant

15    acted with deliberate indifference.  See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

16    To state a claim of deliberate indifference, plaintiffs must meet a two-part test.  First,

17    the alleged constitutional deprivation must be, objectively, "sufficiently serious"; the

18    official's act or omission must result in the denial of "the minimal civilized measure of life's

19    necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prison official must

20    have a "sufficiently culpable state of mind," i.e., he must act with deliberate indifference to

21    inmate health or safety.  Id.  In defining "deliberate indifference" in this context, the Supreme

22    Court has imposed a subjective test: "the official must both be aware of facts from which the

23    inference could be drawn that a substantial risk of serious harm exists, and he must also draw

24    the inference."  Id. at 837 (emphasis added).

25    Not every claim by a prisoner that he has received inadequate medical treatment states

26    a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a

27    plaintiff must show that the defendants acted with "deliberate indifference to serious medical

28    needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429

1    U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating

2    that failure to treat the condition could result in further significant injury or the unnecessary

3    and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.

4    Jett, 439 F.3d at 1096 (quotations omitted).

5         "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,

6    1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know

7    of and disregard an excessive risk to inmate health; the official must both be aware of facts

8    from which the inference could be drawn that a substantial risk of serious harm exists and

9    he must also draw the inference.  Farmer, 511 U.S. at 837.  Deliberate indifference in the

10   medical context may be shown by a purposeful act or failure to respond to a prisoner's pain

11   or possible medical need and harm caused by the indifference.  Jett, 439 F.3d at 1096.

12   Deliberate indifference may also be shown when a prison official intentionally denies,

13   delays, or interferes with medical treatment or by the way prison doctors respond to the

14   prisoner's medical needs.  Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

15        Deliberate indifference is a higher standard than negligence or lack of ordinary due

16   care for the prisoner's safety.  Farmer, 511 U.S. at 835.  "Neither negligence nor gross

17   negligence will constitute deliberate indifference." Clement v. California Dep't of

18   Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter

19   Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or

20   "medical malpractice" do not support a claim under § 1983).  The indifference must be

21   substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain."

22   Estelle, 429 U.S. at 105-06.

23        Plaintiff's allegations against the Doe Defendants suggest indifference or negligence,

24   but do not rise to the level of deliberate indifference to Plaintiff's psychiatric needs.  The

25   Court, therefore, will dismiss without prejudice the Doe Defendants.

26   **VI.   Claims for Which an Answer Will be Required**

27        Plaintiff alleges that Defendants Stapley, Brock, Wilson, Kunasek, and Garrida-

28   Wilcox were deliberately indifferent to his psychiatric needs because, as final policymakers

TERMPSREF                                    - 6 -

for Maricopa County, they failed to "properly fund and/or encourage CHS" and Defendant Arpaio to ensure sufficient staffing and resources to remedy the failure to provide timely and adequate health care services to inmates. Plaintiff alleges that Defendant Adams was deliberately indifferent to his psychiatric needs because she failed to "employ and orchestrate the appropriate resources to ensure timely and adequate health services."

Liberally construed, Plaintiff has stated a Fourteenth Amendment claim against Defendants Stapley, Brock, Wilson, Kunasek, Garrido-Wilcox, and Adams. The Court will require these Defendants to answer the Complaint.

## VII.   Warnings

### A.   Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B.   Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.   Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.   Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet,

1  963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to
2  comply with any order of the Court).

3  **IT IS ORDERED:**

4  (1)    Plaintiff's "Motion for Leave to File Complaint on other than a Court-
5  Approved Form" (Doc. #3) is **granted**.

6  (2)    Plaintiff's "Motion to Exceed Page Limitation for Civil Rights Complaint"
7  (Doc. #4) is **granted**.

8  (3)    Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. #5) is **granted**.

9  (4)    As required by the accompanying Order to the appropriate government agency,
10  Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $27.15.

11  (5)    Defendants Arpaio, Jane Does 1-4, and John Does 1-3, are **dismissed** without
12  prejudice.

13  (6)    Defendants Stapley,  Brock, Wilson, Kunasek, Garrido-Wilcox, and Adams
14  must answer the Complaint.

15  (7)    The Clerk of Court must send Plaintiff a service packet including the
16  Complaint (Doc. #1), this Order, and both summons and request for waiver forms for
17  Defendant Stapley,  Brock, Wilson, Kunasek, Garrido-Wilcox, and Adams.

18  (8)    Plaintiff must complete and return the service packet to the Clerk of Court
19  within 20 days of the date of filing of this Order.  The United States Marshal will not provide
20  service of process if Plaintiff fails to comply with this Order.

21  (9)    If Plaintiff does not either obtain a waiver of service of the summons or
22  complete service of the Summons and Complaint on a Defendant within 120 days of the
23  filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the
24  action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv
25  16.2(b)(2)(B)(i).

26  (10)   The United States Marshal must retain the Summons, a copy of the Complaint,
27  and a copy of this Order for future use.

28

TERMPSREF                                                    - 8 -

(11)   The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons.  If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2)of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12)   **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(13)   Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

1     (15)    This matter is referred to Magistrate Judge Jay R. Irwin pursuant to Rules 72.1

2 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized

3 under 28 U.S.C. § 636(b)(1).

4     DATED this 31st day of March, 2010.

5

6                  _____

7                        G. Murray Snow
                       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28