**WO**                                                                                              JDN

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Aaron Emmanuel Soto,                    )  No. CV 10-0679-PHX-GMS (JRI)
                                        )
            Plaintiff,                  )  **ORDER**
                                        )
vs.                                     )
                                        )
Joseph M. Arpaio, et al.                )
                                        )
            Defendants.                 )
                                        )

Plaintiff Aaron Emmanuel Soto brought this civil rights action under 42 U.S.C. § 1983 against multiple Maricopa County officials and employees (Doc. 1).[1] Before the Court is Defendants' Motion to Dismiss (Doc. 19), which Plaintiff opposes (Doc. 28).

The Court will deny Defendants' motion.

**I.   Background**

Plaintiff's claims arose during his confinement in the Lower Buckeye Jail in Phoenix, Arizona (Doc. 1 ¶¶ 14-15, 21). He named as Defendants Correctional Health Services (CHS) Director Betty Adams and Maricopa County Supervisors Don Stapley, Fulton Brock, Max Wilson, Andrew Kunasek, and Mary Rose Garrido-Wilcox (id. ¶¶ 4, 12). In his Complaint, Plaintiff alleged the following facts:

During the intake process on March 17, 2008, Plaintiff informed CHS personnel that

---

[1] Upon screening, the Court dismissed Arpaio, Jane Does 1-4, and John Does 1-3 as Defendants (Doc. 7).

he was diagnosed with bipolar disorder and anxiety disorder for which he was prescribed medication. CHS personnel told him that he would receive a follow-up visit from CHS staff after he arrived at his assigned housing unit. A few days after he arrived at his housing unit, he met with a CHS counselor, who informed Plaintiff that she would return in a week to confirm whether he wanted to resume his medication. The CHS counselor did not return.

On April 18, 2008, Plaintiff submitted a request for psychiatric services. A CHS employee informed him that he was scheduled to see a psychiatrist. A week later, Plaintiff saw another CHS counselor and related to her the symptoms he suffered without his medication. At that time, and again in May and June, the CHS counselor told Plaintiff that he would be seen by a psychiatrist soon.

On July 8, 2008, Plaintiff submitted another request for psychiatric services. A CHS counselor told Plaintiff that he was scheduled to be seen by the psychiatrist. Later that month, Plaintiff saw the CHS counselor again, and she told him that he was scheduled to be seen in few weeks.

On August 21, 2008, Plaintiff submitted another request for health services and to see a psychiatrist. He also requested a copy of the health services polices. His request for a copy of the policies was rejected by a CHS employee, who informed Plaintiff that he was scheduled to be seen by a psychiatrist.

On September 3, 2008, Plaintiff filed a formal grievance about his deteriorating mental health and his inability to see a psychiatrist. That same day, Plaintiff was seen by the jail psychiatrist, who prescribed Plaintiff medications for his bipolar and anxiety disorders. The next day, a CHS employee suggested to Plaintiff that the delay in medical care was caused by resource issues and by Defendant Adam's failure to allocate necessary resources to meet the health care demands of the jail. On September 5, 2008, Plaintiff received his prescription medication (id. ¶¶ 14-57).

Plaintiff alleged that the Board Defendants were deliberately indifferent to his mental health needs because, as final policymakers for the county, they failed to adequately fund or encourage CHS and the sheriff to ensure sufficient staffing and resources to provide timely

and adequate heath care. Plaintiff claimed that Adams was deliberately indifferent because she failed to employ the appropriate resources to ensure timely and adequate health care (id. ¶¶ 68-81).

The Court screened the Complaint, found that Plaintiff's allegations sufficiently stated a Fourteenth Amendment claim, and directed Defendants to respond (Doc. 7). In lieu of an answer, Defendants filed a Motion to Dismiss (Doc. 19).

**II.    Parties' Contentions**

    **A.    Defendants' Motion**

Defendants move to dismiss Plaintiff's claims on the grounds that (1) he failed to exhaust administrative remedies and (2) his allegations do not state a claim (id.).

Defendants argue that Plaintiff failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, they submit the affidavit of Johanne Hutchings, a Sergeant assigned to the Inmate Hearing Unit (id., Ex. 1, Hutchings Aff. ¶ 1). Hutchings describes Maricopa County Sheriff's Office (MCSO) Policy DJ-3, which sets forth the three-tiered jail grievance system: (1) the initial grievance and decision by the Bureau Hearing Officer; (2) the Institutional appeal to the Jail Commander; and (3) the External appeal (id. ¶¶ 3-4 & Ex. A). Hutchings states that inmates are notified of these grievance procedures during orientation when they receive a copy of the "MCSO Rules and Regulations for Inmates" (id. ¶ 4 & Ex. B). Hutchings avers that the MCSO grievance record for Plaintiff reflects that he filed one grievance on September 3, 2008, related to health care; however, he failed to appeal this grievance beyond the first level of the grievance system (id. ¶¶ 6-8, Ex. D).

Defendants argue that the single heath-care grievance that Plaintiff submitted is untimely as to those claims that arose in March, April, July or August 2008 (id.). Defendants explain that under Policy DJ-3, a grievance must be submitted within 48 hours of the event begin grieved (id.). They note that Plaintiff's health care grievance was filed on September 3, 2008 (id., Ex. D); therefore, Defendants maintain that any claims of deliberate indifference before the 48-hour window preceding this grievance must be dismissed (id.). Defendants

1 further maintain that Plaintiff withdrew his grievance on the same day he submitted it and
2 deliberately choose not to appeal it to the next level (id. at 4-5). Defendants argue that to
3 exhaust remedies, an inmate must pursue all levels of the MCSO administrative procedures
4 (Doc. 19 at 3). They submit that because Plaintiff did not proceed beyond the first step in
5 the grievance process, he failed to exhaust remedies (id. at 4).

6 Next, Defendants contend that Plaintiff did not name any of the remaining Defendants
7 in his health-care grievance, nor does his grievance mention inadequate funding or staffing
8 levels (id.). Defendants contend that Plaintiff's grievance therefore failed to provide jail
9 officials an opportunity to consider the grievance and correct any problems (id. at 5-6).
10 Defendants conclude that, for these reasons, the Complaint must be dismissed for
11 nonexhaustion (id.).

12 In addition to nonexhaustion, Defendants argue that Plaintiff fails to state a deliberate-
13 indifference claim because he concedes that he was seen by mental health staff six times and
14 he was seen by a psychiatrist immediately after submitting his grievance (id. at 6-7).
15 Defendants assert that the sole issue in Plaintiff's grievance was his desire to see a
16 psychiatrist, and within hours of submitting his grievance he was seen by a psychiatrist,
17 thereby demonstrating "the exact opposite of deliberate indifference" (id. at 7). Defendants
18 submit that the facts require dismissal of Plaintiff's Complaint (id. at 7-8).

19 **B.     Plaintiff's Response[2]**

20 Plaintiff opposes Defendants' Motion to Dismiss (Doc. 28). He recites the facts
21 supporting his claim, and he states that on September 4, 2008, after he saw the psychiatrist
22 and received a prescription for his medication, he withdrew the grievance he had submitted
23 the previous day (id. at 1-3). Plaintiff avers that he requested another grievance form because
24 he sought to grieve the fact that the delay in medical care was due to the lack of resources
25 within the MCSO, as a CHS employee had explained to him after he saw the psychiatrist (id.

---

[2]The Court issued the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. 20).

1 at 3-4). Plaintiff was told by jail staff that they were temporarily out of grievance forms, and his request for a grievance form the next day was met with the same response (id.). Plaintiff was also told that he could not grieve an issue that was more than 48 hours old, and he was never provided with a form within two days after learning about the lack of resources (id. at 4).

Plaintiff submits that administrative remedies were not available to him because after he met with the psychiatrist, he was unable to obtain a grievance form (id. at 6). He cites numerous cases holding that the PLRA requires exhaustion only of those remedies that are actually available to the inmate and that it is possible to exhaust remedies without appealing to the highest level of review (id. at 5-6).

Plaintiff also argues that the MCSO grievance policy did not require him to name Defendants in his grievance, nor was he required to identify legal and factual claims in this grievance (id. at 7).

In response to Defendants' failure-to-state-a-claim argument, Plaintiff asserts that his allegations establish deliberate indifference to his serious medical needs and therefore state a cognizable claim for relief (id. at 9-10). And he contends that he sufficiently alleges liability under Monell (id. at 10-12, citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 649 (1978)).

### C. Defendants' Reply

In reply, Defendants contend that Plaintiff's unsubmitted grievance, which he claims he sought to file on September 4 or 5, 2008, was substantively and procedurally defective (Doc. 31 at 2). They argue that the MCSO grievance procedures prohibit duplicative grievances, and Plaintiff's unsubmitted grievance would have been a wrongful attempt to resurrect his withdrawn September 3 grievance because it addressed the same issue (id. at 3). Defendants therefore maintain that it is not relevant whether Plaintiff was able to obtain a grievance form because even if he had, his grievance would have been rejected (id. at 3-4). Defendants also reargue that Plaintiff failed to allege deliberate indifference in his Complaint (id. at 1).

## IV. Exhaustion

### A. Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B. Analysis

Defendants present three arguments for dismissal based on nonexhaustion: (1) Plaintiff failed to appeal his grievance; (2) Plaintiff failed to grieve any medical issue before September 3, 2008; and (3) Plaintiff failed to name Defendants or allude to funding, staffing levels, or allocation of resources in his grievance (id. at 5-6). The Court finds that none of Defendants' arguments are tenable.

#### 1. Failure to Appeal

Plaintiff's September 3, 2008 grievance described the delays in care from the time he entered the jail in March 2008 until the date he filed his grievance, and he expressed the resulting urgent need to see a psychiatrist (Doc. 19, Ex. D). He therefore requested to see a psychiatrist (id.). Plaintiff was not required to parse out potential legal claims in his grievance and, for example, grieve the current need to see a psychiatrist and separately grieve

1 that medical care at the jail has been delayed. See Griffin, 557 F.3d at 1120 (purpose of a grievance is to alert jail officials to a problem, not lay ground work for litigation). Nor was Plaintiff required to specifically grieve deliberate indifference resulting from the delays in mental health care. Id. (inmate's grievance was sufficient because it notified jail officials of the problem; inmate was not required to grieve that the problem resulted from deliberate indifference).

Once Plaintiff saw a psychiatrist—the relief he sought in the grievance regarding an ongoing failure to provide mental health services—he was not required to proceed to the next step in the grievance process. Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies"). At that point, Plaintiff's remedies were exhausted, and he was not required to file another grievance after he was seen by the psychiatrist. The parties' arguments pertaining to the adequacy of Plaintiff's unsubmitted grievance are of no moment.

### 2. Untimeliness

Contrary to Defendants' argument, Plaintiff's claim does not relate to an isolated incident in September 2008, nor do his allegations concern isolated denials of care in March, April, July, or August. Plaintiff alleges that continuous delays in mental health care from March through September 2008 constituted deliberate indifference (see Doc. 1). Indeed, isolated incidents relative to an inmate's overall treatment do not establish deliberate indifference, unless that single incident is egregious. McGuckin v. Smith, 974 F.2d 1050, 1060-61 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). It is repeated failures—delays and denials of care—that give rise to a deliberate-indifference claim. McGuckin, 974 F.2d at 1060-61. And jail officials did not tell Plaintiff that he would not be permitted to see a psychiatrist; rather, they repeatedly informed him that he would see a psychiatrist soon. Compare Ngo v. Woodford, 539 F.3d 1108, 1109 (9th Cir. 2008) (applying statute of limitations principles to the timeliness of a grievance). Thus, Plaintiff's deliberate indifference claim did not arise until

1  there were repeated delays in care. Plaintiff's September 3, 2008 grievance describes his
2  repeated requests to see a psychiatrist and medical personnel's repeated assurances that he
3  would be seen, yet he was never seen (Doc. 19, Ex. D). This grievance sufficiently describes
4  an ongoing lack of medical care, which resulted in deteriorating mental health and the urgent
5  need to see a psychiatrist, and therefore serves to exhaust the claim in Plaintiff's Complaint.
6       Moreover, it was incumbent upon jail officials to properly inform Plaintiff if his
7  grievance was untimely or only partially granted or otherwise denied. See Brown v. Valoff,
8  422 F.3d 926, 937 (9th Cir. 2005). Although Plaintiff specifically complained about the lack
9  of mental health care since March 2008, the response to his grievance made no mention of
10 untimeliness as to his earlier delays in care.

### 3. Failure to Name Defendants and Identify Claims

12      As to the specificity of Plaintiff's grievance, it did not have to include every fact
13 necessary to support his eventual legal claim. As indicated above, the purpose of a grievance
14 "is to alert the prison to a problem and facilitate its resolution, not to lay ground work for
15 litigation." Griffin, 557 F.3d at 1120   Therefore, Plaintiff was not required to allege every
16 fact later set forth in his pleading, nor was he required to identify individual legal theories
17 or defendants. See Jones, 549 U.S. at 218-19. In his September 3, 2008 grievance, Plaintiff
18 wrote that he had been at the jail since March 2008; that he had submitted numerous written
19 requests to see a psychiatrist for his diagnosed conditions; and that he had been repeatedly
20 told he was scheduled to be seen, but he had not yet seen a doctor (Doc. 19, Ex. D). Plaintiff
21 also expressed the urgency for treatment and stated that his mental health and ability to
22 function were deteriorating (id.). This sufficed to put jail officials on notice of the ongoing
23 delay in obtaining mental-health treatment.
24      For the above reasons, the Court finds that Defendants have not met their burden to
25 demonstrate failure to exhaust administrative remedies. Their request for dismissal on this
26 basis will be denied.

27 **V.    Failure to State a Claim**
28     **A.    Legal Standard**

A motion to dismiss for failure to state claim, which is governed by Federal Rule of Civil Procedure 12(b)(6), tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of the complaint, or any claim within it, may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint must be construed in the light most favorable to the nonmovant. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the facts pleaded allow the court to make the reasonable inference that the defendant is liable. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation omitted). Further, courts must "continue to construe pro se filings liberally," especially where the plaintiff is a pro se prisoner in a civil rights action. Hebbe v. Pliler, 611 F.3d 1202, 1205 (9th Cir. 2010).

A Rule 12(b)(6) motion to dismiss is almost never an appropriate response when the court has already screened a prisoner complaint pursuant to 28 U.S.C. § 1915A(b) and directed the defendants to respond. The standard for dismissal under Rule 12(b)(6) is identical to the standard under 28 U.S.C. § 1915A(b) ("fail[ure] to state a claim upon which relief may be granted"). After the Court has screened a prisoner complaint pursuant to § 1915A(b), a Rule 12(b)(6) motion to dismiss will be granted only if the defendants can convince the Court that reconsideration is appropriate. Reconsideration is appropriate only if the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255,

1263 (9th Cir. 1993); see Defenders of Wildlife v. Browner, 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (reconsideration is permitted only in rare circumstances).

### B.     Analysis

Defendants argue that Plaintiff's alleged facts fail to establish deliberate indifference (Doc. 19 at 6-8). The same standard that was applied at screening is applied to Defendants' motion, and they present nothing that causes the Court to reconsider its Screening Order. Defendants' interpretation of a phrase in Plaintiff's Complaint—that he "had been seen by mental health staff 6 times" (Doc. 1 ¶ 54)—to mean that he received care ignores Plaintiff's factual contentions showing that he did *not* receive care during those counselor visits and he never saw a psychiatrist (see id. ¶¶ 23-27, 29-33, 37-38). These factual contentions, and Plaintiff's allegations against Defendants, are sufficient to state a Fourteenth Amendment claim (see Doc. 7).

The Court finds that there is no ground for dismissal under Rule 12(b)(6), and Defendants' Motion to Dismiss will be denied.

**IT IS ORDERED that** the reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 19), and the motion is **denied**.

DATED this 18th day of October, 2010.

_____
G. Murray Snow
United States District Judge